UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GOULD ELECTRONICS, INC.,

       Plaintiff,                                    Case No. 17-cv-11130

vs.                                                    HON. MARK A. GOLDSMITH

LIVINGSTON CTY. ROAD COMM'N,

       Defendant.
_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTION TO DISMISS (Dkt. 11)**

This matter is currently before the Court on Defendant Livingston County Road Commission's ("LCRC") motion to dismiss (Dkt. 11). The motion has been fully briefed, and a hearing was held on September 28, 2017. For the reasons that follow, the Court denies LCRC's motion.

**I. BACKGROUND**

The dispute between these two parties has a lengthy history, the entirety of which need not be repeated now. It is sufficient, for purposes of the instant motion, to state that Plaintiff Gould Electronics, Inc. ("Gould") originally filed suit against LCRC in 2009, in Gould Electronics, Inc. v. Livingston Cty. Road Cmm'n, No. 09-cv-12633 (E.D. Mich.) (the "Original Action"). Compl. ¶ 1 (Dkt. 1). In the Original Action, Gould sought to recover from LCRC costs that it incurred in investigating and responding to high levels of Trichloroethylene and related contaminants ("TCE") in the groundwater located on property in Howell, Michigan. Id.

The Original Action was dismissed without prejudice on May 29, 2012. See Stipulated Order of Dismissal Without Prejudice ("Stipulated Order"), Ex. A to Compl. (Dkt. 1-2). Upon

1

dismissal, the parties entered into a tolling agreement (the "Tolling Agreement") which provided, in relevant part, as follows:

> 4. <u>REFILING</u>. Either Gould or LCRC may revive pursuit of the surviving claims existing as of the time of dismissal of this Lawsuit in a new case (the "New Case"), however, neither Gould nor LCRC shall file the New Case prior to the earlier of December 15, 2012 or 30 days following the MDEQ's approval or denial of LCRC's NFA. The New Case shall be commenced by filing a complaint in the United States District Court for the Eastern District of Michigan referencing the current case and reciting the connection between it and the New Case. Gould or LCRC may accomplish service in the New Case by serving a copy of the new complaint upon the opposing party's current counsel of record in the Lawsuit, who is hereby authorized to accept service of same on behalf of that party.
>
> [. . .]
>
> 6. <u>PURPOSE</u>. . . .The time from the dismissal of the Lawsuit pursuant to this Agreement to the filing of the New Case will not be counted in calculating the passage of any relevant statute of limitations.

Tolling Agreement, Ex. B to Compl., ¶¶ 4, 6 (Dkt. 1-3).

The instant case was filed on April 11, 2017, and Gould continues its attempts to recover costs from LCRC. Gould has alleged claims under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9607(a); and Michigan's Natural Resources and Environmental Protection Act, Mich. Comp. Laws § 324.20126. LCRC now argues that the case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because the statute of limitations has expired.

## II. STANDARD OF REVIEW

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief." <u>Albrecht v. Treon</u>, 617 F.3d 890, 893 (6th Cir. 2010). To survive a motion to dismiss, a

complaint must plead specific factual allegations, and not just legal conclusions, in support of each claim. Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009). A complaint will be dismissed unless it states a "plausible claim for relief." Id. at 679.

Although the statute of limitations is an affirmative defense, dismissal of an action is appropriate under Rule 12(b)(6) if the "allegations in the complaint affirmatively show that the claim is time-barred." Stein v. Regions Morgan Keegan Select High Income Fund, Inc., 821 F.3d 780, 786 (6th Cir. 2016); Jones v. Bock, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]").

### III. ANALYSIS

LCRC argues that the statute of limitations has run on Gould's claims, either because (i) that the time for refiling under the Tolling Agreement has expired, or (ii) the Tolling Agreement is void or unenforceable due to the doctrine of mutual mistake.[1] The Court will evaluate each argument in turn.

**A. The time for refiling has not expired**

LCRC first argues that, although the Tolling Agreement contains no express limit on a refiling date, viewing the Stipulated Order and Tolling Agreement together establishes that the tolling period ended in 2012. Def. Mot. at 10 (Dkt. 11). LCRC explains that when the parties agreed to dismiss the First Action, they intended that LCRC would submit a No Further Action ("NFA") request to the Michigan Department of Environmental Quality ("MDEQ"):

> 3. NFA. Within 30 days following the Court's entry of the Stipulated Order of Dismissal Without Prejudice . . . LCRC shall both submit its no further action request and accompanying

---

[1] Although neither party directly addresses this issue, both seem to agree that the statute of limitations would have expired if the tolling period ended in 2012 (as LCRC claims).

>   materials to the MDEQ . . . and simultaneously serve copies of the
>   NFA on Gould's counsel.

Tolling Agreement ¶ 3. LCRC argues that the parties understood that LCRC could be "exonerated" by the issuance of an NFA; they anticipated that this process would proceed quickly and would be finished by the end of 2012. Def. Mot. at 3-4.[2] LCRC also points out that the Tolling Agreement and Stipulated Order also state that, if a new case is filed, "the current record, pleadings, . . . etc. in this lawsuit shall be preserved as applicable and binding in the New Case as they currently are in this lawsuit. The New Case shall proceed to trial on an expedited basis . . ." Stipulated Order ¶ 4; Tolling Agreement ¶ 5. LCRC argues that this shows that the parties expected that the process before the MDEQ would be completed "expeditiously." Def. Reply at 3 (Dkt. 16). Finally, LCRC notes that the stated purpose of the Tolling Agreement is to "maintain and preserve the status quo . . . while allowing the regulatory process to proceed with the MDEQ's consideration of the NFA to be submitted by LCRC." Tolling Agreement ¶ 6.

When all of these provisions are viewed together, LCRC argues, the Court should conclude that the tolling period was intended to run coextensively with the MDEQ's review of LCRC's NFA request. Def. Mot. at 10. The parties estimated that this would take until about the end of 2012. Id. Gould responds that the Tolling Agreement does not contain any deadline by which either Party would need to file a new case, and the Court cannot now rewrite the Tolling Agreement to infer one. Pl. Resp. at 9, 11-12 (Dkt. 14).

Courts interpret tolling agreements just as they would any other contract. See Delano v. Abbott Laboratories, 908 F. Supp. 2d 888, 895 (W.D. Tenn. 2012) (citing cases). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." City of Grosse

---

[2] Although LCRC did submit its NFA request to the MDEQ in 2012, the complaint asserts that LCRC withdrew its NFA request in 2013, and has not submitted any equivalent request. Compl. ¶ 30.

4

Pointe Park v. Michigan Municipal. Liab. & Prop. Pool, 702 N.W.2d 106, 113 (Mich. 2005) (quoting McIntosh v. Groomes, 198 N.W. 954 (Mich. 1924)). The intent of the parties is determined and enforced "based on the plain language of the agreement." Harbor Park Mkt., Inc. v. Gronda, 743 N.W.2d 585, 588 (Mich. Ct. App. 2007). "If the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning; but if it is ambiguous, testimony may be taken to explain the ambiguity." City of Grosse Pointe Park, 702 N.W.2d at 113 (quoting New Amsterdam Cas. Co. v. Sokolowski, 132 N.W.2d 66 (Mich. 1965)) (alterations omitted). "A court may not rewrite a contract under the guise of interpretation if the terms are clear and unambiguous." Harbor Park Mkt., 743 N.W.2d at 588.

The Tolling Agreement is not ambiguous. It provides that the earliest date either party can file a new case is either (i) December 15, 2012, or (ii) 30 days following the MDEQ's decision regarding LCRC's NFA, whichever is earlier. See Tolling Agreement ¶ 4. It is silent regarding the latest date that the parties could file a new case. The plain meaning of the Tolling Agreement, then, is that the parties did not intend to establish an end date for when the case could be re-filed. Even construing the Tolling Agreement as a whole and together with the Stipulated Order, nothing in the document can be read to mean that the tolling period ended in late 2012, as LCRC contends. If the parties had intended to establish an end date for the tolling period, they had every chance to state as much in the Tolling Agreement. They did not.

The Court cannot read terms into a contract that do not exist. The tolling period has not expired, and thus the time from the dismissal of the Original Action until the filing of the instant case "will not be counted in calculating the passage of any relevant statutes." See Tolling Agreement ¶ 6.

**B. The Agreement is not void or unenforceable**

In the alternative, LCRC argues that the Court should find that the Tolling Agreement is void due to the doctrine of mutual mistake. Def. Mot. at 11. The doctrine of mutual mistake was explained over a century ago in Sherwood v. Walker, 33 N.W. 919 (Mich. 1887), and has not changed since. Ford Motor Co. v. City of Woodhaven, 716 N.W.2d 247, 256 (Mich. 2006). A "mutual mistake of fact" is "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction." Id. "[A] mutual mistake in a material fact regarding the subject matter of the contract may render that contract unenforceable." Stivers v. Marts, No. 09-203, 2010 WL 4025938, at * 3 (W.D. Mich. Oct. 13, 2010) (citing Sherwood, 33 N.W. 919).

In Sherwood, the parties agreed upon the terms of sale for a barren cow; after the contract was entered into, the parties discovered that the cow was pregnant and therefore worth much more than the agreed-upon price. 33 N.W. at 923. The court held that the defendants had a right to rescind the contract because the contract was made upon the mutual mistake of a material fact, "such as the subject-matter of the sale, the price, or some collateral fact materially inducing the agreement." Id. The court then further explained:

> The difficulty in every case is to determine whether the mistake or misapprehension is as to the substance of the whole contract, going, as it were, to the root of the matter, or only to some point, even though a material point, an error as to which does not affect the substance of the whole consideration.

Id.

LCRC argues that both parties mistakenly believed that the proper procedure for determining which party was responsible for the TCE contamination was the submission of an NFA request before the MDEQ. Def. Mot. at 13. In reality, the NFA procedure was "not available." Id. Gould responds that the issue of whether the NFA request was the proper

6

administrative review procedure was not material to the purpose of the Tolling Agreement, nor did Gould rely on this assumption when entering into the Tolling Agreement. Pl. Resp. at 17.

It is not clear that there was a mutual mistake, let alone that it went to the "root of the matter." The parties certainly intended that LCRC submit an NFA request to the MDEQ, as the Tolling Agreement recites that there were "advantages of deferring the trial of this Lawsuit until after the MDEQ has been provided the opportunity to consider and respond to the LCRC's request." Tolling Agreement at 2. But there is no indication that the parties "would not have made the [Tolling Agreement] except upon the understanding and belief that" <u>the NFA request</u> was the proper procedure for resolving their dispute. See <u>Sherwood</u>, 33 N.W. at 923. According to the Complaint, LCRC has been working with MDEQ in some capacity since the Original Action was dismissed, even though the NFA request was withdrawn. See Compl. ¶¶ 30-34. There is nothing to indicate that <u>this</u> specific NFA procedure was the foundation on which the parties agreed to enter into the Tolling Agreement, rather than a general understanding that MDEQ, rather than this Court, would work to determine responsibility for the TCE contamination.

In the absence of a mutual mistake that goes to the substance of the Tolling Agreement, the Tolling Agreement is neither void nor unenforceable.

## IV. CONCLUSION

For the reasons provided, Defendant Livingston County Road Commission's motion to dismiss (Dkt. 11) is denied.

SO ORDERED.

Dated: February 23, 2018                   s/Mark A. Goldsmith
    Detroit, Michigan                        MARK A. GOLDSMITH
                                              United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 23, 2018.

s/Karri Sandusky<br>
Case Manager