UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GOULD ELECTRONICS, INC.,

        Plaintiff,                              Case No. 17-cv-11130

vs.                                                     HON. MARK A. GOLDSMITH

LIVINGSTON CTY. ROAD COMM'N,

        Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION TO DISMISS (Dkt. 26) AND DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF AN INDEPENDENT EXPERT WITNESS (Dkt. 31)

This matter is currently before the Court on Defendant Livingston County Road Commission's ("LCRC") second motion to dismiss (Dkt. 26) and Plaintiff Gould Electronics, Inc.'s ("Gould") motion for appointment of an independent expert witness (Dkt. 31). The motions have been fully briefed. Because oral argument will not aid the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons that follow, the Court denies both motions.

### I.    BACKGROUND

Gould initiated a lawsuit against LCRC on July 6, 2009. Gould Electronics, Inc. v. Livingston Cty. Rd. Cmm'n, No. 4:09-cv-12633 (E.D. Mich). In short, the dispute concerned the "determination of responsibility for costs associated with the cleanup and remediation of trichloroethylene (TCE) contamination on two adjacent parcels of real property and the surrounding area," located in Howell, Michigan. Gould Electronics, Inc. v. Livingston Cty. Rd. Cmm'n, No. 09-12633, 2012 WL 5817937, at *1 (E.D. Mich. May 25, 2012). One parcel is owned

1

by LCRC (the "LCRC Property"); the other is owned by a third party, but Gould is indisputably responsible for liabilities arising from the property (the "Gould Property"). Id. Gould alleges that LCRC shares responsibility for the contamination; LCRC contends that Gould is fully responsible. Id.

On May 29, 2012, the parties stipulated to an order of dismissal without prejudice, in accordance with a tolling agreement entered into by the parties on May 21, 2012 (the "Tolling Agreement"). See Stip. Order of Dismissal, Ex. A to Am. Compl. (Dkt. 22-2). The Tolling Agreement contained the following provisions relevant to the instant dispute:

> 3. NFA. Within 30 days following the Court's entry of the Stipulated Order of Dismissal Without Prejudice referred in the preceding paragraph, LCRC shall both submit its no further action request and accompanying materials to the MDEQ pursuant to MCL § 324.20114d and R299.5534 (the "NFA") and simultaneously serve copies of the NFA on Gould's counsel. Gould shall have the right to submit materials to the MDEQ in response to the NFA, and LCRC shall not object to the fact that Gould has made a submission.
>
> [. . .]
>
> 5. NEW CASE. If a New Case is filed, the current record, pleadings, Joint Final Pretrial Order, discovery, expert reports, legal positions of the parties, etc. in the Lawsuit shall be preserved as applicable and binding in the New Case as they currently are in the Lawsuit. The New Case shall proceed to trial on an expedited basis, with any new discovery limited to data gathered regarding the soil and groundwater contamination at issue and related analyses conducted thereon after July 6, 2009.
>
> 6. PURPOSE. The purpose of this Agreement is to maintain and preserve the status quo of the parties' respective current legal positions in the Lawsuit while allowing the regulatory process to proceed with the MDEQ's consideration of the NFA to be submitted by LCRC. Neither party waives any arguments or positions it may take in the future regarding the legal impact of any decision the MDEQ makes regarding the NFA. All defenses based upon the passage of time will be preserved, but only to the extent that they would have been valid in the Lawsuit. The time from the dismissal of the Lawsuit pursuant to this Agreement to the filing of the New Case will not be counted in calculating the passage of any relevant

> statutes of limitations. The Parties' agreement to dismissal of the Lawsuit shall not prejudice, release, or waive any of the Parties' respective claims or defenses, except as set forth specifically in this Agreement. The Parties preserve their full and complete right to pursue against each other the respective surviving claims existing as of the time of dismissal of the Lawsuit pursuant to this Agreement, and no provision of this Agreement is intended to impair or limit the respective rights of Gould and LCRC against each other, except as set forth specifically in this Agreement.

Tolling Agreement, Ex. B to Am. Compl., at 2-4 (Dkt. 22-3).

Gould initiated a new action, within the meaning of the Tolling Agreement, on April 11, 2017. LCRC sought to dismiss the action, arguing that it was time-barred; the Court denied LCRC's motion. Gould Electronics, Inc. v. Livingston Cty. Road Comm'n, No. 17-11130, 2018 WL 1035714 (E.D. Mich. Feb. 23, 2018). Gould then filed an amended complaint on March 9, 2018, where it alleges violations of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9607(a) ("CERCLA"); and Michigan's Natural Resources and Environmental Protection Act, Mich. Comp. Laws §§ 324.20126 and 324.20126a ("NREPA"); and claims that it should be granted access to LCRC's property to conduct reasonable response activities. See generally Am. Compl. (Dkt. 22).

LCRC subsequently filed the instant motion, again seeking to dismiss Gould's case.

## II. ANALYSIS

### A. MOTION TO DISMISS

#### 1. Standard of Review

LCRC has filed the instant motion as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or, alternatively, a motion for judgment on the pleadings pursuant to Federal Rule 12(c). However, LCRC has not yet filed an answer in this case. This precludes the Court from ruling on the motion pursuant to Federal Rule 12(c). See Wright & Miller, 5 Fed. Prac. & Proc. § 1367 ("Similarly, the defendant may not move under Rule 12(c) prior to filing an answer.");

3

see also Signature Combs, Inc. v. U.S., 253 F. Supp. 2d 1028, 1030 (W.D. Tenn. 2003) ("A motion for judgment on the pleadings may only be brought after the pleadings are closed. Fed R. Civ. P. 12(c). Pleadings are deemed 'closed' upon the filing of a complaint and answer . . . . Thus, [defendant's] motion was premature when filed."). Accordingly, the Court will review the instant motion pursuant to Rule 12(b)(6).

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citing Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991)), cert. denied, 552 U.S. 1311 (2008). To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to state a claim to relief above the speculative level, such that it is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility standard requires courts to accept the alleged facts as true, even when their truth is doubtful, and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555-556.

Evaluating a complaint's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Although a complaint that offers no more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" will not suffice, id. at 678, it need not contain "detailed factual allegations," Twombly, 550 U.S. at 555; see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("[S]pecific facts are not necessary . . . ."). Rather, a complaint needs only enough facts to suggest that discovery may reveal evidence of illegality, even if the likelihood of finding such evidence is remote. Twombly, 550 U.S. at 556.

## 2. Michigan Department of Environmental Quality Affidavits

LCRC largely bases its motion off of two affidavits from the Michigan Department of Environmental Quality ("MDEQ") dated January 25, 2018. See Heidi Grether Aff., Ex. A to Def. Mot. (Dkt. 26-2); Dennis Eagle Aff., Ex. B to Def. Mot. (Dkt. 26-3) (together, the "MDEQ Affidavits"). Relying on these affidavits, LCRC states that "the Director of the MDEQ, vested with the statutory authority to so declare, announced the Agency's final determination that only Plaintiff Gould, and specifically not the Defendant Road Commission, was responsible for the TCE contamination[.]" Def. Mot. at 2-3. LCRC's position is that the parties agreed, as evidenced by the Tolling Agreement, that MDEQ would determine liability for the TCE contamination, and MDEQ has now concluded that LCRC is not liable. See generally id. at 11-14. Gould argues that the MDEQ did not make a liability determination and, at any rate, the MDEQ's decision is not binding on the parties. See generally Pl. Resp. at 3-5 (Dkt. 29).

Rule 12(b)(6) motions must typically be limited to consideration of the pleadings. Geiling v. Wirt Fin. Servs., Inc., No. 14-11027, 2015 WL 1529866, at *4 (E.D. Mich. Mar. 31, 2015). Although "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim," id. (quoting Weiner v. Klais & Co., Inc., 108 F.3d 86, 88 (6th Cir. 1997)), the MDEQ Affidavits are not referred to in Gould's complaint in any way or attached to the pleading. The Court, therefore, will not consider them in resolving the motion to dismiss.

This Court has the authority under Rule 12(d) to convert the motion to dismiss to a motion for summary judgment, and thus consider matters outside of the pleadings. The Court declines to do so. LCRC has not requested that the court convert the motion to one for summary judgment, and Gould asks that the Court refrain from doing so before Gould has a full opportunity to conduct

discovery, Pl. Resp. at 14. The parties vigorously dispute the significance and meaning of the MDEQ Affidavits, and the Court believes that a full and complete record is necessary before entering a summary judgment ruling.

The Court now addresses LCRC's arguments regarding Gould's claims, considering only the allegations in the complaint.

### 3. CERCLA Claim

Gould's first claim is brought pursuant to § 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a). LCRC argues that this claim fails because it is based entirely on the passive migration of hazardous substances from the Gould Property onto the LCRC Property, for which there can be no liability under CERCLA. Def. Mot. at 19. The cases relied upon by LCRC are clear that passive migration cannot constitute a "disposal" within the meaning of CERCLA. See Bob's Beverage, Inc. v. Acme, Inc., 264 F.3d 692, 697 (6th Cir. 2001); see also Lockheed Martin Corp. v. Goodyear Tire & Rubber Co., 529 F. App'x 700, 705 (6th Cir. 2013) ("CERCLA imposes liability only on the owner of a facility at which the hazardous substances were disposed of. And here, . . . the PCBs were released from the Airdock's siding and then spread 1,000 feet north into Haley's Ditch. That type of passive migration does not constitute a Disposal within the meaning of CERCLA.") (internal quotations, citations, and alterations omitted).

But here there is no indication that Gould believes LCRC to be liable because it owned or operated a facility "at the time of disposal or treatment of any hazardous substance," 42 U.S.C. § 9607(a)(2). Instead, Gould alleges that LCRC is liable as "the owner and operator of a . . . facility," id. § 9607(a)(1). See Am. Compl. ¶ 6 ("LCRC is a Michigan road commission . . . which owns and operates a facility located at 918 North Street, Howell, Michigan (the 'LCRC Property').").

6

LCRC does not explain how passive migration bears on liability for a current owner and operator. See ABB Indus. Sys., Inc. v. Prime Tech., Inc., 120 F.3d 351, 358 (2d Cir. 1997) ("[C]urrent owners are liable if, inter alia, there has been a 'release' of hazardous substances. Unlike the definition of disposal, release is defined to include 'leaching,' which is commonly used to describe passive migration.") (internal citations omitted).

Gould alleges that a release has occurred on the LCRC Property.[1] Am. Compl. ¶ 32 ("The LCRC Property has released hazardous substances, including TCE, and other contaminants to neighboring properties."). Accordingly, LCRC has not shown that Gould has failed to state a claim under CERCLA.

4. **NREPA Claim**

Count Two of the Amended Complaint alleges violations of Michigan's Natural Resources and Environmental Protection Act ("NREPA"), Mich. Comp. Laws §§ 324.101 et seq. LCRC puts forth two arguments as to why Gould's NREPA claim must fail: (1) under Michigan Compiled Laws § 324.20129, Gould cannot bring a contribution claim unless it has been sued under Part 201 of NREPA, and Gould never has been; and (2) MDEQ has determined that LCRC is not a liable party under Section 20125 of NREPA, and therefore the contribution claim under Michigan Compiled Laws § 324.20129 fails.

As for the first argument, LCRC is correct that section 324.20129(3) states, "[a] person may seek contribution from any other person who is liable under section 20126 during or following a civil action brought under this part. This subsection does not diminish the right of a person to

---

[1] LCRC argues that "MDEQ has conclusively determined that no releases of chlorinated solvents occurred on the LCRC property," Def. Mot. at 14, but "[a] motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations," Golden v. City of Columbus, 404 F.3d 950, 958-959 (6th Cir. 2005) (emphasis added).

bring an action for contribution in the absence of a civil action by the state under this part." In Wacker Chem. Corp. v. Bayer Cropscience, Inc., No. 05-72207, 2006 WL 2404502, at *5 (E.D. Mich. Aug. 18, 2006), the court explained that "[t]he statute is not ambiguous. The first sentence requires that a person seeking contribution may only do so during or following litigation under Part 201. The second section clarifies that the suit referenced in the first sentence need not have been brought by the state: it could have been brought by a private party."

Gould does not contest that it has never been sued under Part 201. Instead, it says that LCRC "mistakenly argues" that it is pursuing a contribution claim under section 324.20129, when its claim is for cost recovery pursuant to section 324.20126a. Pl. Resp. at 20. Gould argues that it may bring a cost-recovery action even in the absence of a prior lawsuit against it. In United States v. Atl. Research Corp., 551 U.S. 128, 139 (2007), the Supreme Court held that a private party "may recover under § 107(a) [of CERCLA] without any establishment of liability to a third party[;]" Michigan courts have acknowledged that "MCL 324.20126a is modeled after § 107(a) of the CERCLA" and "federal authority concerning CERCLA is instructive in light of the similar purposes of the NREPA and the CERCLA," Hicks Family Ltd. Partnership v. 1st Nat. Bank of Howell, No. 276575, 2008 WL 2744333, at *2-*3 (Mich. Ct. App. July 15, 2008).

In its reply brief, LCRC argues that regardless of which section Gould bases its claim upon, a "necessary element" of a contribution claim and a cost-recovery claim is that LCRC must be a liable party, and "MDEQ has conclusively determined that LCRC is in fact not liable for the chlorinated solvent plume." Def. Reply at 6 (Dkt. 30). However, as the Court has explained, it will not consider the MDEQ Affidavits at this stage of the proceedings. The Amended Complaint alleges that LCRC is in fact liable for response costs associated with the contamination, as "[h]azardous substances, including TCE, and other contaminants, including salt contaminants,

8

have been released from the LCRC Property onto neighboring properties." Am. Compl. ¶ 45. Accordingly, LCRC has not shown that Gould fails to state a cost-recovery claim on this basis.

LCRC's second argument also relies on the MDEQ Affidavits. LCRC originally argued that it is not liable for a contribution claim; after Gould responded that it was in fact asserting a cost-recovery claim, LCRC said in its reply that Gould does not have a viable cost-recovery claim "because MDEQ has conclusively determined that LCRC is in fact not liable for the chlorinated solvent plume." Def. Reply at 6. Such a determination is denied by Gould and is not alleged anywhere in the amended complaint. LCRC's argument that the amended complaint fails to state a claim on this basis also fails.

5. **Salt Contamination**

Finally, LCRC argues that Gould's allegations regarding salt contamination are barred by the doctrine of laches, as Gould has shown a lack of diligence in asserting claims based on salt. Def. Mot. at 23-24. LCRC contends that, in the eight years since Gould filed its original complaint, Gould had not once suggested that it had a claim against LCRC based on salt, and LCRC would be prejudiced by the introduction of such claims at this stage of the proceeding. Id. at 24. Gould responds that salt and TCE "are inextricably tied together" and that it has "long been undisputed" that LCRC is solely responsible for salt contamination on the LCRC Property. Pl. Resp. at 22-23.

The Court declines to rule, at this stage, that salt contamination is not a part of this case. The Court will convene a conference to discuss the next steps in this case, including the framing of issues for adjudication. As part of that process, the Court will address the salt issue.

B. **MOTION FOR APPOINTMENT OF INDEPENDENT EXPERT**

Gould asks the Court to appoint an independent expert witness pursuant to Federal Rule of Evidence 706. The Rule provides, in relevant part:

> On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.

Fed. R. Evid. 706(a). Gould argues that an independent expert witness would assist the Court in evaluating the relevance, reliability, admissibility, and weight to be given to the evidence in this case, which involves complex technical and scientific issues. Pl. Mot. at 5. LCRC opposes the motion, arguing that Gould has never before asked for the appointment of an independent expert – including when the case was set to proceed to trial in 2012 – and that there is no need at this point to bring in an expert who would be unfamiliar with the complex history of this case. Def. Resp. at 2-4 (Dkt. 32).

The Court denies Gould's request. "[T]he use of court-appointed experts is relatively infrequent and most judges view the appointment of an expert as an extraordinary activity that is appropriate only in rare circumstances." Davis-Bey v. City of Warren, No. 16-11707, 2017 WL 1230509, at *3 (E.D. Mich. Apr. 4, 2017) (quoting Mikko v. Smock, No. 10-12845, 2012 WL 8963806, at *1 (E.D. Mich. Sept. 6, 2012)) (quotations omitted). The Court finds that the expense and time commitment incurred by appointing an expert at this stage of the proceeding – after more than nine and a half years of litigation – would far outweigh any benefit an independent expert could provide. This is particularly so where the parties' Joint Final Pretrial Order provides for the parties' own experts, whose testimony will be sharpened by our adversarial system. There is no need for the extraordinary step of appointing an expert witness.

### III. CONCLUSION

For the reasons provided, Defendant Livingston County Road Commission's motion to dismiss (Dkt. 26) and Plaintiff Gould Electronic's motion for appointment of an independent expert (Dkt. 31) are denied.

SO ORDERED.

Dated: March 1, 2019　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 1, 2019.

　　　　　　　　　　　　　　　　　　　　　　　s/Kristen MacKay for Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　　　Case Manager