UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GOULD ELECTRONICS INC.,

    Plaintiff,

vs.

LIVINGSTON COUNTY ROAD
COMMISSION,

    Defendant.
_____/

Case No. 17-11130

HON. MARK A. GOLDSMITH

**OPINION & ORDER
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR STAY
OF EXECUTION OF JUDGMENT PENDING APPEAL (Dkt. 268)**

This matter is before the Court on Plaintiff Gould Electronics Inc.'s motion for a stay of execution of judgment pending appeal (Dkt. 268). The motion has been fully briefed. Because oral argument will not assist in the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons discussed below, the Court grants in part and denies in part the motion.

**I.    BACKGROUND**

The factual background of this case has been exhaustively described in the Court's previous opinions and need not be repeated here in full. See, e.g., 11/19/20 Opinion (Dkt. 265). In brief summary, this environmental contamination case involved the determination of responsibility for costs associated with the cleanup and remediation of trichloroethylene ("TCE") on two adjacent parcels of real property and the surrounding area. Id. at 4. Gould is indisputably responsible for liabilities arising from one of the parcels, which was owned and operated in the 1960s and 1970s

by non-party Gould Inc., one of Gould's corporate predecessors. Id. at 6. The adjoining parcel is owned by Defendant Livingston County Road Commission ("LCRC"). Id. at 7.

The parties disputed who was responsible for causing a plume of TCE contamination traversing their properties and migrating toward a nearby lake. While LCRC maintained that Gould Inc. was solely responsible for dumping hazardous waste that resulted in the contamination, Gould asserted that LCRC also contributed to the contamination by dumping TCE on its property. Id. at 4. Consequently, Gould advanced a cost recovery claim under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607(a). Id. Meanwhile, LCRC asserted contribution counterclaims under CERCLA, 42 U.S.C. § 9613(f), and under Michigan's Natural Resources and Environmental Protection Act, Mich. Comp. Laws § 324.20129. Id. at 5. Both parties sought reimbursement of their response costs—the costs incurred in connection with their investigation and cleanup of the contamination. Id. at 4-5.

The Court conducted a seven-day bench trial between July 13, 2020, and July 21, 2020, by way of videoconference. On November 19, 2020, the Court entered an opinion setting forth its findings of fact and conclusions of law. Concluding that Gould Inc. was solely responsible for causing the contamination but that LCRC failed to fully cooperate with the state's efforts to investigate the site, the Court equitably allocated 95% of the response costs to Gould and 5% to LCRC. Id. at 6. In accordance with this allocation, the final judgment awarded Gould $212,664.85 and awarded LCRC $1,174,817.92. Judgment (Dkt. 266).

Both parties have appealed. Pending resolution of those appeals, Gould seeks a stay of execution of the judgment under Federal Rule of Civil Procedure 62(b), as well as a waiver of the requirement that it post bond or other security. Mot. at 1-2 (Dkt. 268). LCRC opposes granting a

2

stay, but alternatively argues that if a stay is granted, the Court should not waive the requirement that Gould post bond. Resp. at 1-9 (Dkt. 272).

## II.    ANALYSIS

### A. Applicable Standard

Under Federal Rule of Civil Procedure 62(b), a litigant may obtain a stay of execution of a judgment pending appeal "by providing a bond or other security." A stay of a monetary judgment issues as a matter of right under the rule when a supersedeas bond is posted and is approved by the court. Arban v. West Publ'g Corp., 345 F.3d 390, 409 (6th Cir. 2003); see also Am. Mfrs. Mut. Ins. Co. v. Am. Broad. Paramount Theaters, Inc., 87 S. Ct. 1, 3 (1966).

Rule 62(b), however, "'in no way necessarily implies that filing a bond is the only way to obtain a stay.'" Arban, 345 F.3d at 409 (quoting Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n, 636 F.2d 755, 759 (D.C. Cir. 1980)). Under appropriate circumstances, courts may exercise their discretion to dispense with the bond requirement when granting a stay of a monetary judgment. Id.; see also 12 James Wm. Moore, et al., Moore's Federal Practice § 62.03 (3d ed. 1999). Although the Sixth Circuit has not set forth a specific test guiding the analysis of whether an unsecured stay is appropriate, courts addressing such requests have tended to examine the purpose underlying the bond requirement:

> Rule 62(d) permits an appellant to obtain a stay to avoid the risk of satisfying the judgment only to find that restitution is impossible after reversal on appeal. However, to preserve this right, the appellant must forego the use of the bond money during the appeal period.
>
> For the appellee, Rule 62(d) effectively deprives him of his right to enforce a valid judgment immediately. Consequently, the appellant is required to post the bond to provide both insurance and compensation to the appellee. The supersedeas bond protects the non-appealing party from the risk of a later uncollectible judgment and also provides compensation for those injuries which can be said to be the natural and proximate result of the stay. Therefore, Rule 62(d) establishes not only the appellant's right to a stay, but also the appellee[']s right to have a bond posted.

3

> Because of Rule 62(d)'s dual protective role, a full supersedeas bond should almost always be required.

Hamlin v. Charter Twp. of Flint, 181 F.R.D. 348, 351 (E.D. Mich. 1998) (internal quotation marks and citations omitted).[1]

Despite the presumption that a supersedeas bond is "almost always" required, the Sixth Circuit has held that waiver of the bond requirement is appropriate where the court is confident that the judgment debtor has adequate financial resources to satisfy the judgment. Arban, 345 F.3d at 409. Courts within this district have further explained that waiver is proper in two circumstances: "'[i] where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money; and . . . [ii] where the requirement would put the defendant's other creditors in undue jeopardy.'" Hamlin, 181 F.R.D. at 353 (quoting Olympia Equipment Leasing Co. v. W. Union Telegraph Co., 786 F.2d 794, 796 (7th Cir. 1986)).[2] The party seeking a waiver of the bond requirement bears the burden of demonstrating that the judgment is not at risk. Id.

Gould maintains that the Court may alternatively waive the bond requirement under the four-factor test set forth in Coalition to Defend Affirmative Action v. Granholm, 473 F.3d 237, 244 (6th Cir. 2006). See Mot. at 4-13. Traditionally employed to evaluate whether to grant a stay of an injunction, this test considers the following four factors, referred to as the "Hilton factors": "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the

---

[1] Prior to 2018, Rule 62(d) governed stays of judgments obtained by furnishing bond; the 2018 amendment of the rule moved that provision to subsection (b). 11 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 2905 (3d ed. 2020).

[2] When determining whether to waive the bond requirement, the Second and Seventh Circuits employ a similar test to evaluate a judgment debtor's ability to pay. See In re Nassau Cnty. Strip Search Cases, 783 F.3d 414, 417-418 (2d Cir. 2015); Dillon v. City of Chicago, 866 F.2d 902, 904-905 (7th Cir. 1988).

likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." Coalition to Defend, 473 F.3d at 244.[3]

The Hilton factors, however, have no application where a party seeks a stay of a monetary judgment. Although the Sixth Circuit has not directly confronted the issue, the court evaluated a defendant's ability to pay, as opposed to the Hilton factors, in affirming a stay of a monetary judgment. See Arban, 345 F.3d at 409. The Second Circuit expressly declined to apply the Hilton factors when granting a stay of a monetary judgment, reasoning that evaluating the moving party's ability to pay the judgment "more directly address[es] the primary purpose of Rule 62(d): to ensure recovery for a party who ultimately prevails on appeal, and to protect the judgment debtor from the risk of losing the money if the decision is reversed." In re Nassau Cnty. Strip Search Cases, 783 F.3d 414, 418 (2d Cir. 2015). Likewise, several courts within this district have determined that the Hilton factors do not apply where a party seeks a stay of a monetary judgment. See, e.g., Kanuszewski v. Mich. Dep't of Health & Human Servs., No. 18-cv-10472, 2019 WL 1002489, at *2 (E.D. Mich. Mar. 1, 2019); Acosta v. Min & Kim Inc., No. 15-cv-14310, 2018 WL 3586369, at *2 (E.D. Mich. July 26, 2018); Chang Lim v. Terumo Corp., No. 11-cv-12983, 2014 WL 2051219, at *1 (E.D. Mich. May 19, 2014).

Although Gould insists that the Hilton factors are relevant to the present analysis, the cases it cites in support of this position are both out-of-circuit and unpersuasive. See Reply at 3-4 (Dkt. 275). While the First Circuit made the tepid observation that "[i]t is at least arguable" that a monetary judgment may be stayed by reference to the Hilton factors, it emphasized that courts must also consider whether the judgment creditor's interests are adequately protected. Acevedo-

---

[3] The Hilton factors derive their name from Hilton v. Braunskill, 481 U.S. 770 (1987).

Garcia v. Vera-Monroig, 296 F.3d 13, 17 n.4 (1st Cir. 2002). In Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., the court did not determine whether the Hilton factors applied in the context of a monetary judgment, instead holding that the plaintiff failed to demonstrate entitlement to a stay under either Rule 62 or the Hilton factors. No. CV 02–1087–VAP, 2008 WL 11336665, at *3 (C.D. Cal. July 14, 2008). Finally, Standard Havens Prods., Inc. v. Gencor Indus. Inc. is inapposite, as the Federal Circuit applied the Hilton factors in granting a stay of a judgment imposing both an injunction and monetary damages. 897 F.2d 511, 512, 515-516 (Fed. Cir. 1990).

In view of these authorities, the Court's analysis of whether to waive the bond requirement is guided by reference to the adequacy of Gould's financial resources to satisfy the judgment, rather than by the Hilton factors.

## B. Waiver of the Bond Requirement

Gould contends that it has sufficient financial resources available to satisfy the judgment entered in this case, emphasizing that it has voluntarily expended in excess of $4 million in remediation costs over the past 25 years. Mot. at 4; Reply at 1. Gould also notes that the Michigan Department of Environment, Great Lakes, and Energy, the regulatory agency responsible for supervising the site cleanup, never raised concerns regarding Gould's financial ability to fulfill its remediation obligations. Mot. at 4.

Notwithstanding Gould's payment of remediation costs, it has not met its burden of establishing its ability to satisfy the judgment. "[C]ourts have generally required the appellant to present 'a financially secure plan for maintaining that same degree of solvency during the period of an appeal.'" Hamlin, 181 F.R.D. at 353 (quoting Poplar Grove Planting & Refining Co., v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1190 (5th Cir. 1979)). In instances where courts have granted waivers of the bond requirement, the moving party has submitted concrete evidence

establishing its financial ability to satisfy the judgment. See, e.g., Arban, 345 F.3d at 409 (noting that the defendant presented evidence of revenues of approximately $2.5 billion); Dillon, 866 F.2d at 905 (noting that the defendant presented evidence that the judgment would be satisfied from a fund of $484 million); Contract Design Group, Inc. v. Wayne State Univ., No. 10-cv-14702, 2014 WL5360055, at *3 (E.D. Mich. Oct. 20, 2014) (noting that the defendant presented evidence that it had over $183 million in unrestricted funds available to satisfy the judgment). Here, Gould has made no effort at producing documentation regarding its net worth or solvency, such as account statements or balance sheets reporting the company's assets and liabilities.

LCRC, by contrast, casts doubt on Gould's ability to satisfy the monetary judgment, citing evidence that Gould is a shell company with no assets or income. Resp. at 3-5. Beginning in 1994, Gould's corporate predecessor, Gould Inc., underwent a series of complex restructurings, ultimately resulting in the formation of Gould, the party to the litigation and a wholly owned subsidiary of Japanese parent company JX Nippon Mining & Metals. Rich Dep. at 28-29, 42, 79-82, 101-105 (Dkt. 189-21). It is undisputed that Gould ceased all operations in 2006 and, since that time, has existed solely to manage the assets and liabilities of its corporate predecessors' discontinued operations, id. at 14-15, 29, 90, currently maintaining only three employees to carry out this work, Trial Tr. III at 86 (Callahan) (Dkt. 260); Cronmiller Dep. at 26 (Dkt. 249).

Because Gould's mission is simply to manage liabilities, its annual budget is premised on its environmental consultants' estimates of the costs of remediation. Cronmiller Dep. at 25. As described by James Cronmiller, Gould's former director of corporate environmental affairs, the finances for these costs are furnished by Gould's Japanese parent corporation:

> Q. And what determines what available resources you have in the budget process?
> A. I don't understand the question.
> Q. How do you know how much money you're going to have to spend?

|   |   |   |
|---|---|---|
| A. | | Based on our cost estimate. That's what sets— |
| Q. | | So whatever it costs, you will have available to you? |
| A. | | I certainly hope so, yes. |
| Q. | | And where does that money come from? |
| A. | | I'm not exactly sure. |
| Q. | | Where do you believe it comes from? |
| A. | | It comes from our parent corporation. |

Id.

This evidence establishes that Gould generates no revenue and is entirely dependent on its foreign parent company to meet its expenses. Cronmiller's testimony that he "hopes" to have access to funds to meet the costs of remediation is a far cry from definitive assurance that Gould will be able to satisfy the judgment entered in this case. Though Gould has expended in excess of $4 million in response costs, those costs were incurred in piecemeal fashion over the course of 25 years, with the largest lump-sum outlay being $195,000. See Consultant Summary & Invoices (Dkts. 207-5, 207-6); MNB Settlement Agreement (Dkt. 207-9). Gould's historic track record of paying its response costs, therefore, has little bearing on its ability to make a lump-sum payment of over $1 million. In light of this evidence and in the absence of documentation establishing Gould's solvency, the Court is unpersuaded that Gould has the financial resources available to satisfy the judgment if it is unsuccessful on appeal.

Gould maintains that had it wished to escape its remediation obligations, it could have declared bankruptcy before incurring over $4 million in remediation costs. Reply at 2. Similarly, it argues that if it lacked adequate financial resources or otherwise planned to act in bad faith relative to the monetary judgment, it would not have taken the procedural steps necessary to obtain a stay. Id. But the fact that Gould did not abdicate its obligations or act in bad faith in the past is no guarantee that it will not do so in the future. And, far from establishing its ability to pay the

judgment, Gould's apparent admission that it "could have" declared bankruptcy long ago raises further concerns about the company's financial stability. In any case, even without bad faith, companies can suffer significant and sometimes irreversible reversals of fortune, as the stinging recessions of 2008 and 2020 demonstrated most graphically. Ultimately, Gould bore the burden of demonstrating the availability of funds to pay the judgment. It has not done so. Accordingly, the Court declines to waive Gould's obligation to post bond to obtain a stay of the judgment.

Though Gould is not entitled to waiver of the bond requirement, it nevertheless would be entitled as a matter of right to a stay of the judgment once the Court approves a supersedeas bond. See Arban, 345 F.3d at 409. Thus, while LCRC's wholesale opposition to granting a stay is without merit, the Court sustains its alternative argument that a bond should be required if a stay is granted.

Any motion by Gould for approval of a supersedeas bond must be filed no later than May 4, 2021. In preparing any such motion, Gould should bear in mind that "[t]he courts generally require that the amount of the bond include the full amount owed under the award, and anticipated appeal costs, post-judgment interest, and damages for delay caused by the appeal." EB-Bran Prods., Inc. v. Warner Elektra Atlantic, Inc., No. 03-75149, 2006 WL 1851010, at *3 (E.D. Mich. July 5, 2006). Any response to the motion must be filed no later than 14 days after service of the motion; any reply must be filed no later than 7 days after service of the response. If Gould does not timely file a motion to approve bond, its request for a stay will be denied. If it does file such a motion, the request for a stay will be granted temporarily until the Court can resolve the motion to approve the bond.

### III. CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Gould's motion for stay of execution of judgment pending appeal (Dkt. 268).

SO ORDERED.

Dated: April 19, 2021                              s/Mark A. Goldsmith
    Detroit, Michigan                              MARK A. GOLDSMITH
                                                   United States District Judge